# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

WINSTON BELL-BEY,          )
                                  )
        Petitioner,         )
                                  )
vs.                         )       **Case No. 4:02 CV 1914 ERW (LMB)**
                                  )
DON ROPER,              )
                                  )
        Respondent.      )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the petition of Winston Bell-Bey for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

### Procedural History

Petitioner is presently incarcerated at Potosi Correctional Center in Mineral Point, Missouri, pursuant to the judgment and sentence of the Circuit Court of St. Louis County, Missouri. See Respondent's Exhibit B at 202. On October 24, 1998, petitioner was found guilty after a jury trial of first degree murder and armed criminal action.[1] See id. He was sentenced as a persistent offender to a term of life imprisonment without parole on the murder count and a concurrent term of life imprisonment on the armed criminal action count. See id.

---

[1]Petitioner was found guilty after a prior jury trial, and was sentenced to death. See State v. Bell, 950 S.W.2d 482, 482 (Mo. Ct. App. 1997). The Missouri Court of Appeals for the Eastern District reversed the trial court's judgment and remanded for a new trial after finding that hearsay evidence of petitioner's prior abuse of the victim was erroneously admitted and prejudiced petitioner. See id. at 484-85.

Petitioner raised five points on direct appeal of his convictions.  <u>See</u> Resp't Ex. C.  In his first point relied on, petitioner argued that the trial court erred in allowing the prosecution to introduce evidence of petitioner's prior abuse of the victim.  <u>See id.</u> at 16.  In his second point relied on, petitioner claimed that the trial court plainly erred in answering a question posed by the jury during deliberations without notifying counsel.  <u>See id.</u> at 18.  In his third point relied on, petitioner argued that the trial court abused its discretion in overruling defense counsel's objection and motion for mistrial when the court referred to defense witness Pamela Walker as a "lying witness."  <u>See id.</u> at 19.  In his fourth point relied on, petitioner claimed that the trial court clearly erred in rejecting petitioner's <u>Batson</u> challenge to the prosecution's peremptory strike of Venireperson Johnson, an African-American male, because the prosecution exercised its strike based upon Venireperson.Johnson's race.  <u>See id.</u> at 20.  In his final point relied on, petitioner argued that the trial court abused its discretion in sustaining the prosecution's objection and in prohibiting petitioner from adducing testimony and business records from Ed Sander to rebut testimony from Verna Lewis regarding petitioner's prior abuse of the victim.  <u>See id.</u> at 21.  On December 21, 1999, the Missouri Court of Appeals for the Eastern District affirmed petitioner's convictions in an unpublished memorandum opinion.  <u>See</u> Resp't Ex. E.

On July 10, 2000, petitioner filed a <u>pro</u> <u>se</u> motion to vacate, set aside, or correct the judgment of the Circuit Court of St. Louis County, Missouri, pursuant to Missouri Supreme Court Rule 29.15.  <u>See</u> Resp't Ex. F at 4-16.  In this motion, petitioner argued that he was denied effective assistance of counsel for the following reasons: (1) trial counsel failed to object to the prosecutor's questioning of Annette Smith about petitioner's prior abuse of the victim; (2) trial counsel failed to object during a pretrial hearing to the introduction of testimony of Felicia Jones

regarding petitioner's prior abuse of the victim; and (3) appellate counsel failed to raise the claim that the trial court erred in overruling petitioner's motion to limit the tape-recorded 911 call of the victim.  See id.  After appointment of counsel, petitioner filed a "First Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing."  See id. at 23-31.  In his amended motion, petitioner argued that trial counsel was ineffective for opening the door to hearsay evidence that petitioner had previously abused the victim.  See id.

An evidentiary hearing was held on May 24, 2001, during which petitioner asked the motion court to take judicial notice of the court file, transcript and pleadings from the trial court.  See Resp't Ex. G at 2.  The State presented the testimony of Curtis Cox, petitioner's trial counsel, and Carrie Costantin, the assistant prosecuting attorney who prosecuted petitioner on behalf of the State.  See id. at 2-24.  Mr. Cox and Ms. Costantin, after reviewing the transcript of Ms. Smith's testimony, testified that they believed the transcript was incorrect.  See id. at 16, 21.  Specifically, they testified that on page 603 of the transcript, when recounting a conversation between the victim and herself regarding the identity of the victim's abuser in a prior incident, Ms. Smith actually said "[h]er *husband* done it," rather than her cousin.  Id.  In addition, they testified that the next question asked by Ms. Costantin was "[w]hat was the nickname she used for her *husband*," and not her cousin.  Id.

The motion court entered findings of fact and conclusions of law on July 17, 2001, wherein the court denied petitioner's motion for postconviction relief.  See id. 42-51.  The court found the testimony of Mr. Cox and Ms. Costantin to be credible and found that the transcript was incorrect.  See id. at 48.  In light of this finding, the court concluded that counsel was not ineffective in his cross-examination of Ms. Smith because the prosecution, not defense counsel,

had established that the victim identified her husband as the source of her injuries. See id. at 50. The court further found that, even if the transcript were correct, petitioner still cannot show counsel was ineffective because the eyewitness testimony of Verna Lewis was far more prejudicial to petitioner than Ms. Smith's hearsay testimony. See id. at 51.

Petitioner timely filed a notice of appeal from the denial of postconviction relief. See id. at 54. Petitioner also asked the Missouri Court of Appeals for the Eastern District to recall its mandate. See Resp't Ex. J. The Court conditionally granted the motion based on the finding that the transcript relied on in the direct appeal was incorrect, and consolidated it with petitioner's appeal from the denial of his postconviction relief motion. See id. Petitioner raised four points in his consolidated appeal and motion to recall the mandate. See Resp't Ex. H. Petitioner first argued that the Court should take cognizance of the record from his postconviction proceeding regarding the discrepancy in the trial transcript. See id. at 22. Petitioner next claimed that a motion to recall the mandate is the appropriate remedy because circumstances have arisen that cast doubt on the correctness of the law of the case as established on appeal. See id. at 26. Petitioner also argued that Point I of his direct appeal would have been decided differently if the transcript read as petitioner alleges it does because the trial court had no authority to deviate from the Missouri Supreme Court's mandate in petitioner's first trial, and the proceedings which resulted in petitioner's conviction are, therefore, null and void. See id. at 31. Petitioner argued in the alternative that Point I of his appellate brief would have been decided differently because the trial court erred in overruling petitioner's objections and in allowing the prosecution to introduce hearsay statements regarding incidents of prior abuse of the victim because the Missouri Supreme Court already determined on the first appeal that these statements were inadmissible hearsay. See

id. In his final point, petitioner argues that, should the Court determine that the transcript was accurately transcribed, then in the alternative to Points I, II, and III, the motion court clearly erred in denying petitioner's allegation in his postconviction motion that trial counsel was ineffective for opening the door to hearsay evidence that petitioner had previously abused the victim. See id. at 39. On July 23, 2002, the Missouri Court of Appeals for the Eastern District affirmed the denial of postconviction relief and denied petitioner's motion to recall the mandate. See Resp't Ex. J.

On January 24, 2003, petitioner, pro se, filed a petition for a writ of habeas corpus, raising the following grounds for relief: (1) the trial court erred in permitting the prosecution to introduce prejudicial hearsay testimony of the victim under the residual hearsay exception; (2) the trial court erred in answering a question posed by the jury during deliberations without notifying defense counsel; (3) the trial court abused its discretion in denying petitioner's motion for mistrial after the court referred to defense witness Pamela Walker as a "lying witness," in the presence of the jury; (4) a Batson violation resulted from the peremptory challenge to Venireperson Johnson; (5) the trial court abused its discretion in sustaining the prosecution's objection and prohibiting petitioner from adducing testimony and business records from Ed Sander to rebut the testimony of Verna Lewis regarding prior abuse of the victim; and (6) he received ineffective assistance of counsel because trial counsel elicited hearsay testimony from Annette Smith regarding petitioner's prior abuse of the victim. See Document Number 5. On April 21, 2003, respondent filed a Response to Order to Show Cause, in which he argues that petitioner's grounds for relief fail on their merits. See Doc. No. 18.

On October 7, 2003, after appointment of counsel, petitioner filed an Amended Petition for Writ of Habeas Corpus. (Doc. No. 23). In his Amended Petition, petitioner raised the

following grounds for relief: (1) his due process rights were violated when the trial court allowed improper rebuttal of petitioner's witnesses and allowed improper hearsay evidence of "prior bad acts," (2) his rights to due process and a fair trial were violated when the trial judge referred to defense witness Pamela Walker as a "lying witness," in the presence of the jury; (3) his equal protection rights were violated when the trial judge allowed the prosecution to peremptorily strike an African-American venireperson based solely on race; (4) his conviction was obtained in violation of the Compulsory Process Clause because the trial judge refused to allow him to present business records testimony from defense witness Ed Sander to contradict the rebuttal testimony of Verna Lewis; and (5) he was deprived of his right to be present at all critical stages of the trial when the trial judge answered a jury question during deliberation without notifying defense counsel. See Doc. No. 23. On November 7, 2003, respondent filed a Response to Court Order, in which he argued that parts of petitioner's first ground for relief are untimely and the remainder of petitioner's grounds for relief fail on their merits. See Doc. No. 25. Petitioner has also filed a "Traverse and Reply Brief," in which he provides further argument in support of the claims raised in his Amended Petition. See Doc. No. 26.

## Facts

On June 3, 1994, a 911 emergency call was received from Fay Allen, petitioner's wife, requesting help and stating that petitioner had set her on fire. Ms. Allen suffered second and third degree burns to ninety percent of her body and died two weeks later from resulting complications.

Prior to petitioner's second trial, a hearing was held regarding the admissibility of hearsay statements of Ms. Allen. See Resp't Ex. B at 115. The trial court determined that statements made by Ms. Allen to a co-worker, Annette Smith, were admissible under the residual hearsay

- 6 -

exception. See id. at 117-18. The court found that these statements evidenced petitioner's intent and were reliable and trustworthy. See id.

At trial, the prosecution presented testimony from emergency personnel regarding Ms. Allen's statements on the day of the incident. A tape recording of Ms. Allen's 911 call was played for the jury. See Resp't Ex. A at 246. Ronald Fritz, a paramedic, testified that Ms. Allen was alert and oriented upon his arrival at the scene. See id. at 266. Mr. Fritz testified that he asked Ms. Allen what had happened to her and she responded that her husband poured gasoline on her and lit her on fire. See id. at 265. Sidney Casey, a paramedic who responded to the scene along with Ronald Fritz, testified that while treating Ms. Allen at the scene, she asked Ms. Allen what had happened. See id. at 277. Ms. Casey testified that Ms. Allen stated that her husband poured gasoline on her and burned her. See id. Ms. Casey testified that Ms. Allen was alert and oriented while in the ambulance traveling to the hospital. See id. at 281.

Dr. Alicia Patera-Saboeiro testified that she was called to the emergency room at St. John's Hospital to treat Ms. Allen on June 3, 1994. See id. at 292. Dr. Patera-Saboeiro stated that Ms. Allen was awake and was communicative. See id. Dr. Patera-Saboeiro testified that she asked Ms. Allen what had happened to her and Ms. Allen responded that her husband had poured gasoline on her and lit her on fire. See id. at 293. Dr. Patera-Saboeiro testified that Ms. Allen stated that after her husband set her on fire, she got into the shower and put the flames out, and then called 911. See id. Dr. Patera-Sobeiro testified that Ms. Allen sustained second and third degree burns to approximately 90 percent of her body. See id. at 294-95. Dr. Patera-Sobeiro stated that Ms. Allen was sedated and intubated throughout the two weeks she was hospitalized. See id. at 293-94. Dr. Patera-Sobeiro testified that Ms. Allen died on June 17, 1994. See id. at

298.

Edward Mage, a former lieutenant with the St. Louis Police Department, testified that while on patrol on June 3, 1994 at about 8:00 p.m., he saw petitioner trying to enter a parked vehicle. See id. at 309. Mr. Mage stated that when petitioner saw him, he fled on foot. See id. at 310. Mr. Mage testified that he exited his patrol car and began chasing petitioner. See id. Mr. Mage stated that he identified himself as a police officer and ordered petitioner to stop. See id. at 310. Mr. Mage testified that he followed petitioner and eventually found him underneath a car, at which time he and two other officers ordered petitioner to come out. See id. at 312. Mr. Mage stated that, when petitioner would not come out, he and the other officers pulled him out from underneath the vehicle, handcuffed him, and placed him in the back of the patrol car where he was picked up by two St. Louis County officers. See id. at 313-14.

Gary Fourtney, a police officer with the St. Louis County Police Department, testified that he and Detective Fitch arrived at the Detective's Bureau to interview petitioner. See id. at 316. Detective Fourtney testified that they took petitioner to Regional Hospital for treatment because petitioner complained about pain in his shoulder and arm. See id. at 317. Detective Fourtney testified that he observed petitioner state to the hospital intake clerk that he does not have an address. See id. at 319. When the hospital clerk asked petitioner if he was homeless, Detective Fourtney testified that petitioner responded "I am now." See id. Detective Fourtney stated that petitioner was examined and was found fit for confinement. See id. at 320.

Detective Fourtney testified that he and Detective Fitch then transported petitioner to the interview room of the division office. See id. at 321. Detective Fourtney stated that prior to interviewing petitioner, petitioner was advised of his Miranda rights and waived those rights. See

id. at 321-22. Detective Fourtney testified that petitioner stated that he had last been at Ms. Bell's house about a week ago. See id. at 325. Detective Fourtney testified that when petitioner was asked about being at Ms. Allen's house earlier that day, petitioner began to cry. See id. at 326. Detective Fourtney stated that when petitioner was asked what happened at the house earlier that day, petitioner responded, "I don't know. I don't know." Id. Detective Fourtney testified that when petitioner was asked how it happened, he stated "It just happened. It just happened." Id. Detective Fourtney testified that petitioner continued to cry for a period of time and then indicated that he wanted to sleep. See id. at 326-27. Detective Fourtney testified that petitioner did not answer any more questions and put his head down on the desk, at which time the detectives left the room. See id. at 327.

John Raines, a fire investigator with the St. Louis County Police Department, Arson and Explosives Unit, responded to Ms. Allen's house on June 3, 1994 at approximately 11:15 a.m. to conduct a cause and origin investigation. See id. at 472. Mr. Raines stated that he smelled something similar to gasoline in the house. See id. at 473. Mr. Raines testified that he found a gasoline container containing gasoline in the kitchen. See id. at 475. After reviewing the scene, Mr. Raines concluded that the liquid accelerant, such as gasoline, was poured on a person wearing clothing and the gasoline was then ignited. See id. at 480. Mr. Raines found that there was no accidental cause for the fire. See id. at 483. Mr. Raines testified that the evidence is consistent with Ms. Allen moving down the hallway as an accelerant was poured on her. See id. at 486. Mr. Raines further testified that the physical evidence is consistent with Ms. Allen going to the shower to put the fire out after she is ignited, and igniting little pools of gasoline on her way to the bathroom. See id. at 487.

Bryan Hampton, a forensic scientist for the St. Charles County Sheriff's Department, testified that forensic analysis revealed partially evaporated gasoline on a white cloth seized from underneath a planter vase, on a cloth seized from the bathroom shower, on the sweater Ms. Allen had worn the day of the fire, and on Ms. Allen's clothing seized from the hospital. See id. at 418-20. Mr. Hampton testified that no accelerants were found on petitioner's shorts or socks, while testing of petitioner's shoes was inconclusive. See id. at 422-23.

Alan Dererickson, a forensic scientist for the St. Louis County Police Crime Laboratory, testified that testing revealed that petitioner had type A blood and that none of the blood recovered from the crime scene was determined to be type A. See id. at 434-35. Mr. Dererickson testified that he analyzed a Ginzu knife found at the scene. See id. at 431. Mr. Dererickson stated that analysis revealed a small amount of blood on the handle of the knife. See id. Mr. Dererickson testified that analysis of the blood was conclusive for B and H antigen. See id. Mr. Dererickson testified that blood recovered from the light switch in Ms. Allen's bathroom and her bedroom dresser were found to be consistent with type B blood. See id. at 432-33. Mr. Dererickson stated that Ms. Allen had type B blood. See id. at 434.

Petitioner did not testify at trial. Two of petitioner's sisters and a woman petitioner was involved with romantically at the time of Ms. Allen's death testified on his behalf. Pamela Walker, petitioner's sister, testified that Ms. Allen came to her house on the morning of June 3, 1994, to drop off Ms. Walker's child. See id. at 514-15. Ms. Walker testified that Ms. Allen was intoxicated at that time. See id. at 517.

Shelia Miliner, another sister of petitioner's, testified that she talked with Ms. Allen almost every day for the two weeks prior to Ms. Allen's death. See id. at 539. Ms. Miliner stated that

she told Ms. Allen that petitioner was not ready to settle down and that Ms. Allen should get on with her life. See id. Ms. Miliner testified that she received a phone call from petitioner on the morning of January 3, 1994, and that petitioner seemed to be in a good mood. See id. at 540. Ms. Miliner testified that she could hear Ms. Allen talking in a loud manner in the background. See id. at 541-42.

Karen Sidel testified that she met petitioner in April of 1994 and that she and petitioner developed an intimate relationship. See id. at 543-44. Ms. Sidel testified that she witnessed an altercation between petitioner and Ms. Allen sometime in April or May of 1994. See id. at 545. Ms. Sidel stated that she and petitioner were walking down the street when Ms. Allen drove up in a vehicle, exited the vehicle, and approached petitioner and her. See id. at 546. Ms. Sidel testified that Ms. Allen and petitioner had a heated argument, after which Ms. Allen threw a 40-ounce beer bottle at petitioner. See id. at 547. Ms. Sidel testified that as Ms. Allen threw the bottle, she stated, "[m]other fucker, if I can't have you, won't nobody else will." See id. Ms. Sidel testified that she and petitioner made plans to leave St. Louis and go to Detroit. See id. Ms. Sidel stated that she left for Detroit at the end of May and that petitioner was to join her on June 3, 1994. See id. at 549.

In rebuttal, the prosecution introduced the testimony of Verna Lewis and Annette Smith. Verna Lewis testified that she worked the third shift with Ms. Allen at Vi-Jon, a manufacturing plant. See id. at 585. Ms. Lewis testified that on two different occasions, she observed petitioner strike Ms. Allen in the face at work. See id. at 588. Ms. Lewis testified that on the first occasion, she observed petitioner walk in, hit Ms. Allen, and then leave. See id. Ms. Lewis testified that the second time petitioner came to Ms. Allen's workplace, Ms. Allen appeared to be nervous, and

told her co-workers to tell petitioner that she was not there. See id. at 592. Ms. Lewis testified that after talking to petitioner, Ms. Allen asked Ms. Lewis and other co-workers if they would loan her $5.00, but no one had $5.00 to loan. See id. at 593. Ms. Lewis stated that after Ms. Allen walked back to petitioner, she observed petitioner hit her in the face, which resulted in a black eye and a "busted lip." See id. at 593-94. Ms. Lewis stated that she called her supervisor to report both of the incidents, but by the time the supervisor arrived, petitioner had left. See id. at 590, 594.

Annette Smith testified that she worked the third shift with Ms. Allen at Vi-Jon. See id. at 600-01. Ms. Smith testified that she began driving Ms. Allen to work in March of 1994 because petitioner would take Ms. Allen's car. See id. at 602. Ms. Smith stated that she observed injuries to Ms. Allen when she was driving Ms. Allen to work. See id. Ms. Smith testified that Ms. Allen came to work with black eyes and a busted lip. See id. Ms. Smith stated that the first time she observed Ms. Allen with a black eye, she asked Ms. Allen how it happened and Ms. Allen stated that her female cousin caused the injury. See id. at 602-03. Ms. Smith testified that she did not believe Ms. Allen, so she continued to question her. See id. at 603. Ms. Smith stated that the second time Ms. Allen came to work with a black eye, approximately two weeks after the first incident, Ms. Allen told Ms. Smith that it was petitioner who had caused both black eyes. See id. at 607.

Terry Hodges then testified in rebuttal for petitioner. Ms. Hodges testified that she is Ms. Allen's cousin and that she had dated petitioner before Ms. Allen and petitioner were married. See id. at 623. Ms. Hodges stated that she began experiencing problems with Ms. Allen after she and petitioner were married. See id. at 625. Ms. Hodges testified that Ms. Allen frequently called

her house.  See id. at 626.  Ms. Hodges stated that she also argued with Ms. Allen in person and

that on two different occasions petitioner had to break up physical fights between them.  See id. at

628.  Ms. Hodges testified that during one of these physical fights, she struck Ms. Allen in the

face.  See id. at 636.


I.      **Standard of Review**

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. §

2254(d), which provides:

> (d)  An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct.

1495 (2000).  With respect to the "contrary to" language, a majority of the  Court held that a

state court decision is contrary to clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by [the Supreme Court] on a question of law" or if "the state

court decides a case differently than [the] Court has on a set of materially indistinguishable facts."

529 U.S. at 413, 120 S. Ct. at 1523.  Under the "unreasonable application" prong of §

2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the

Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." Id. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 120 S. Ct. 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 1410, 120 S.Ct. 522.

## II.   Petitioner's Claims

Petitioner raises five grounds for relief. The undersigned will address each ground for relief in turn.

### 1.      Ground One

In his first ground for relief, petitioner argues that the trial court allowed improper rebuttal of petitioner's witnesses and allowed improper hearsay evidence of prior bad acts, which resulted in a due process violation. Specifically, petitioner contends that the testimony of Verna Lewis and Annette Smith regarding the prior bad acts of petitioner did not explain or disprove the testimony of any of the defense's witnesses and resulted in prejudice to petitioner. Petitioner also claims that the evidence presented by the prosecution was insufficient to support of finding of intent or deliberation necessary for a first degree murder conviction. Respondent argues that petitioner's improper rebuttal claim, prior bad acts claim, and insufficient evidence claim were not presented by petitioner to the Missouri Court of Appeals during his direct appeal and are, therefore, procedurally defaulted. Respondent further argues that these claims are untimely because petitioner did not raise them in his original petition. With regard to petitioner's hearsay claim, respondent argues that the Missouri Court of Appeals properly determined that the testimony at

issue was admissible under the residual hearsay exception.

### A.  Procedural Default

It is well-established that the procedural default rule requires a habeas petitioner to pursue all available avenues of relief in the state courts before the federal courts can consider the claim. See 28 U.S.C. § 2254(b); Duvall v. Purkett, 15 F.3d 745, 746 (8th Cir. 1994).  In addressing this issue, a federal court must give deference to state courts and should place great importance on state procedural rules.  See Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989).  By virtue of these considerations, "[a] federal court can consider the merits of a habeas corpus petition only when the prisoner has 'fairly presented to the state courts the substance of his [or her] federal habeas corpus claim.'"  Id. (quoting Martin v. Solem, 801 F.2d 324, 333 (8th Cir. 1986)(internal citations omitted)). To avoid procedural default, "Missouri procedure requires that a claim be presented 'at each step of the judicial process.'"  Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994)(quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)), cert. denied, 513 U.S. 983, 115 S. Ct. 462, 130 L.Ed.2d 370 (1994)).  If a petitioner cannot demonstrate cause, then the court need not determine whether the petitioner has suffered actual prejudice.  See Leggins v. Lockhart, 822 F.2d 764, 768 (8th Cir. 1987), cert. denied, 485 U.S. 907, 108 S. Ct. 1080, 99 L.Ed.2d 239 (1988).

A claim has been fairly presented when a petitioner has properly raised the "same factual grounds and legal theories" in the state courts which he is attempting to raise in his federal habeas petition. Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996).  See Forest v. Delo, 52 F.3d 716, 719 (8th Cir. 1995); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir.), cert. denied, 515 U.S. 1163, 115 S.Ct. 2620, 132 L.Ed.2d 862 (1995).

In the present case, petitioner argued on direct appeal that the trial court erred in overruling his objections and in allowing the prosecution to introduce hearsay evidence of prior abuse. <u>See</u> Resp't Ex. C at 16. Petitioner claimed that these statements were irrelevant, prejudicial other crimes evidence. <u>See id.</u> The undersigned finds that petitioner's hearsay claim on direct appeal encompassed improper rebuttal and prior bad acts claims. Petitioner's statement in his direct appeal that he was prejudiced by evidence of "other crimes" was sufficient to raise a prior bad acts claim. Although petitioner did not specifically argue that the introduction of these statements constituted improper rebuttal, his hearsay claim referred to the evidence introduced on rebuttal, and petitioner complained that the statements were irrelevant. As such, petitioner's improper rebuttal and prior bad acts claims raise the same facts and legal arguments as petitioner's hearsay claim on direct appeal.

Petitioner did not, however, challenge the sufficiency of the evidence in his direct appeal. Plaintiff's claim that the prosecution's evidence was insufficient for a conviction of first degree murder is not raised in his hearsay claim, which only challenges the admissibility of hearsay statements introduced on rebuttal. Petitioner's sufficiency of the evidence claim is based upon different facts and legal arguments than his hearsay claim and was not, therefore, fairly presented to the state courts. Thus, petitioner has defaulted this claim by failing "to present [it] to the Missouri courts at any stage of h[er] direct appeal or h[er] post-conviction proceedings." <u>Sweet v. Delo</u>, 125 F.3d 1144, 1149 (8th Cir. 1997).

## B. Statute of Limitations

Respondent also argues that petitioner's improper rebuttal, prior bad acts, and insufficient evidence claims are untimely because they were not raised in the original petition for habeas

corpus. The Anti-terrorism and Effective Death Penalty Act ("AEDPA") imposed a one-year period of limitation on federal petitions for habeas corpus. The governing provision provides: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). For purposes of the AEDPA, a judgment becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). See Smith v. Bowersox, 159 F.3d 345, 347-48 (8th Cir. 1998). Additionally, §2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Further, "for purposes of § 2244(d)(2), 'an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.'" Marx v. Gammon, 234 F.3d 356, 357 (8th Cir. 2000)(quoting Artuz v. Bennett, 531 U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000)).

In this case, the Missouri Court of Appeals affirmed the denial of postconviction relief on July 23, 2002. See Resp't Ex. J. Petitioner filed his original petition on January 24, 2003, well within the one-year statute of limitations. See Doc. No. 5. Petitioner, however, did not file his amended petition until October 7, 2003, after the expiration of the one-year statute of limitations. See Doc. No. 23. As such, unless petitioner's amended petition relates back to the filing date of his original petition, his amended petition is untimely.

The Federal Rules of Civil Procedure provide for the relation back of amendments filed after the running of a period of limitations in certain circumstances. An amendment to a pleading shall "relate back" to the date of the original pleading only if the claim asserted in the original

- 17 -

pleading and the claim asserted in the amended pleading arose out of the same conduct, transaction, or occurrence. Fed.R.Civ.P. 15(c)(2). See United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999). As such, if the conduct alleged by petitioner in his original petition cannot be said to have arisen out of the same set of facts as his amended petition, his amended petition cannot relate back and his claims must be time-barred. See Craycraft, 167 F.3d at 457.

In the first ground for relief of his original petition, petitioner argued that the trial court erred in permitting the prosecution to admit prejudicial hearsay testimony of prior abuse. The undersigned finds that petitioner's hearsay, prior bad acts, and improper rebuttal claims raised in his amended petition arise out of the same set of facts as the first ground for relief of his original petition and thus relate back to the original petition. Petitioner did not, however, raise a sufficiency of the evidence claim in his original petition. As such, this claim does not relate back to the original petition and is, therefore, untimely.

Petitioner's sufficiency of the evidence claim fails on its merits as well. Petitioner alleges that the prosecution presented insufficient evidence of intent and deliberation, which are required elements of first degree murder. A review of the record reveals that sufficient evidence of intent and deliberation existed for a jury to convict petitioner of first degree murder.

As previously stated, a 911 emergency call was received from petitioner's wife, Ms. Allen, stating that her husband had set her on fire. Petitioner did not seek help for his wife, who sustained second and third degree burns to 90 percent of her body, which eventually resulted in her death. Ms. Allen stated to paramedics and Dr. Saboeiro that her husband had poured gasoline on her and set her on fire, and that she had gotten into the shower to put the fire out, and then called 911. John Raines, a fire investigator with the St. Louis County Police Department, Arson

and Explosives Unit, concluded that gasoline was poured on Ms. Allen as she was moving down the hallway and was then ignited. Mr. Raines found that Ms. Allen entered the bathroom to get into the shower to put out the fire. Mr. Raines further found that there was no accidental cause for the fire. Police arrested petitioner that evening, who attempted to elude capture. When petitioner was asked by a hospital intake clerk for his home address, petitioner responded that he did not have one and that he was now homeless. When police asked petitioner whether he had been at Ms. Allen's house earlier that day, petitioner began crying. Petitioner stated "I don't know. I don't know," when police asked what had happened that day, and then stated "[i]t just happened. It just happened." Resp't Ex. A at 326-27. One cannot pick up a container of gasoline, pour it on another and then set the person on fire without deliberately intending to do so. Thus, sufficient evidence existed from which the jury could find petitioner's intent and deliberation.

### C.    Merits of Ground One

The undersigned finds that petitioner's hearsay claim and supporting arguments presented in his first ground for relief fail on their merits as well. Petitioner first argues that the testimony of prosecution witnesses Verna Lewis and Annette Smith constituted improper rebuttal. "The function of rebuttal is to explain, repel, counteract, or disprove evidence of the adverse party." United States v. Azure, 845 F.2d 1503, 1508 (8th Cir. 1988). However, "[t]he fact that testimony would have been more proper for the case-in-chief does not preclude the testimony if it is proper both in the case-in-chief and in the rebuttal." United States v. Luschen, 614 F.2d 1164, 1170 (8th Cir. 1980). The decision to admit rebuttal testimony "is entrusted to the sound discretion of the [trial] court." Id.

In this case, the defense attorney objected to the prosecution's introduction of rebuttal testimony, arguing that there was no basis for rebuttal. See Resp't Ex. A at 567. The prosecuting attorney stated that she planned to introduce testimony that petitioner was the aggressor to rebut the testimony of defense witness Karen Sidel, who testified that Ms. Allen followed petitioner, argued with him, and threw a bottle at him. See id. at 570. The trial judge overruled the defense's objection and allowed the testimony of Verna Lewis and Annette Smith on rebuttal. The undersigned finds that the trial judge acted within his discretion in allowing this rebuttal testimony. The testimony was presented to rebut the testimony of Karen Sidel, to show that petitioner, rather than the victim, was the aggressor.

Petitioner next argues that, even if it were proper to allow rebuttal evidence, it was nevertheless improper to allow the hearsay testimony of Annette Smith regarding prior bad acts of petitioner. The relevant direct examination of Ms. Smith provides as follows:

> [PROSECUTOR]: During that time when you were driving [Ms. Allen] to work, did you ever observe any injuries to her?
> [MS. SMITH]: Yes.
> [PROSECUTOR]: And could you tell the jury what those injuries were in regard to her face?
> [MS. SMITH]: She had some black eyes. She came in with a busted lip.
> [PROSECUTOR]: The first time you saw [Ms. Allen] with a black eye, did you ask her how she got that black eye?
> [MS. SMITH]: Yes.
> [PROSECUTOR]: And what did she initially tell you?
> [MS. SMITH]: She told me that her cousin done it.
> [PROSECUTOR]: Was this cousin a male or female according to [Ms. Allen]?
> [MS. SMITH]: A female.
> [PROSECUTOR]: Did you believe her when she told you that?
> [MS. SMITH]: No, I didn't.
> [PROSECUTOR]: And did you continue to question her about that?
> [MS. SMITH]: Yes, I did.
> ***
> [PROSECUTOR]: What did [Ms. Allen] tell you?
> [MS. SMITH]: Her cousin done it.

[PROSECUTOR]: What was the nickname she used for her cousin?

[MS. SMITH]: June.

[PROSECUTOR]: Could you describe what Fay's–how she acted when she was telling you about this, about how she got it. About the fact that June had caused the black eye?

***

[MS. SMITH]: The second black eye and busted lip she told me June had done it. She was in a down spirit.

Resp't Ex. A at 602-04. On cross-examination, defense counsel elicited the following testimony

from Ms. Smith:

[DEFENSE COUNSEL]: Now when–excuse me–when Fay Bell told you initially that her cousin and she had gotten into a fight, you didn't believe her, right?

[MS. SMITH]: No, I didn't.

***

[DEFENSE COUNSEL]: And during that period of time, how many days passed before Fay told you that [petitioner] had done it the first time?

[MS. SMITH]: It was the second time she came in with a black eye.

[DEFENSE COUNSEL]: Which was a few weeks later?

[MS. SMITH]: Yes.

***

[DEFENSE COUNSEL]: Now when Fay Bell told you that [petitioner]–when Fay Bell told you that her cousin did it, you knew she had a female cousin didn't you?

[MS. SMITH]: Yes.

[DEFENSE COUNSEL]: Fay Bell had told you about it, right?

[MS. SMITH]: No.

[DEFENSE COUNSEL]: She never told you about any of her female cousins?

[MS. SMITH]: No.

[DEFENSE COUNSEL]: So you told her she was lying, didn't you?

[MS. SMITH]: Yes, I did.

[DEFENSE COUNSEL]: And after she told you that it was her husband that did it, you stopped telling her she was lying, didn't you?

[MS. SMITH]: Yes, I did.

[DEFENSE COUNSEL]: Because at that point, you believed that she was telling you the truth?

[MS. SMITH]: Yes.

[DEFENSE COUNSEL]: And when she told you that her husband did it, you guys didn't discuss what circumstances led up to the incident, did you?

[MS. SMITH]: I don't remember.

[DEFENSE COUNSEL]: She didn't tell you what happened that caused the incident?

[MS. SMITH]: I don't remember what details it was.

[DEFENSE COUNSEL]: She didn't tell you that. She didn't tell you what the reason was, or if she hit Winston back, or if they were in the fight with each other, none of that?

[MS. SMITH]: I don't remember that.
[DEFENSE COUNSEL]: All she said when you continued to press her, she said my husband did it?
[MS. SMITH]: She said June did it.
[DEFENSE COUNSEL]: You knew that to be her husband?
[MS. SMITH]: Yes.

Id. at 606-11.

On direct appeal, The Missouri Court of Appeals found that, based upon the transcript, defense counsel first elicited the testimony from Ms. Smith identifying petitioner as the one who caused Ms. Allen's injuries. See Resp't Ex. E at 6. The Court held that petitioner cannot complain of his own self-invited error. See id.

Petitioner argued in his motion for postconviction relief that his trial counsel was ineffective for opening the door to inadmissible hearsay evidence. See Resp't Ex. F at 23-31. After holding an evidentiary hearing, the motion court found that the trial transcript was incorrect and that Ms. Smith actually said "[h]er *husband* done it," rather than her cousin, and that the next question asked by the prosecuting attorney was "[w]hat was the nickname she used for her *husband*," and not her cousin. Id. at 48 (emphasis added). The motion court, therefore, found that defense counsel did not open the door to the hearsay evidence. See id. at 50. The motion court held that defense counsel was not ineffective in his cross-examination of Ms. Smith because the prosecution had established that Ms. Allen identified her husband as the source of her injuries. See id.

Petitioner then filed a motion to recall the mandate, based on the finding that the transcript relied on in the direct appeal was incorrect, along with an appeal from the denial of postconviction relief. The Missouri Court of Appeals held as follows with regard to petitioner's claim:

Even had the transcript been correct for the court's consideration in [petitioner's]

direct appeal, the statements would not warrant a reversal of [petitioner's] convictions. In the present case, the testimony of Annette Smith concerning statements made to her by [Ms. Allen] was challenged as inadmissible hearsay in [petitioner's] direct appeal. The trial court found that the evidence was otherwise trustworthy and was admissible under the residual exception to the hearsay rule. We do not need to determine whether Smith's testimony was admissible because we do not believe that [petitioner] was prejudiced by the admission of such testimony. However, we do note that in a concurring opinion in [petitioner's first trial], a four-judge majority of the Missouri Supreme Court noted that the testimony of Smith would have been admissible under the residual hearsay exception had such an exception been in effect in Missouri at the time of [petitioner's] trial. State v. Bell, 950, S.W.2d 482, 486 (Mo. banc. 1997). The concurring opinion encouraged the adoption of a residual exception to the hearsay rule, but acknowledged that the evidence at issue had not been attempted to be admitted under such an exception; therefore, the exception could not be invoked *sua sponte*. Id.

Resp't Ex. J at 9. The Court then held that, even if the testimony of Ms. Smith were inadmissible under a residual exception to the hearsay rule, petitioner was not prejudiced by the admission of the testimony because Verna Lewis testified that she personally observed petitioner strike Ms. Allen in the face on two prior occasions at their workplace. See id. at 9-10. The Court further stated that forensic analysis of Ms. Allen's home and petitioner's own statements that were admitted at trial were strong evidence of petitioner's guilt. See id. at 10. The court acknowledged that the Missouri Supreme Court held that the admission of hearsay testimony did affect the outcome of petitioner's first trial. See id. The Court noted, however, that in petitioner's first trial, the State introduced evidence of several prior acts of abuse through the testimony of two police officers who had responded to instances of assault, as well as additional testimony by Ms. Smith concerning statements made to her by Ms. Allen. See id. at 10-11. The Court held that the testimony of Ms. Smith alone in the second trial was not prejudicial to petitioner. See id. at 12.

Generally, questions concerning the admissibility of evidence are matters of state law, and the issue on habeas review is not whether the evidence was properly admitted under state law. See Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). However,

contrary to respondent's argument that this court is bound by the state court's interpretation, evidentiary issues can form the basis for habeas relief if the error constitutes an independent constitutional violation. See Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Id. (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)). To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome. See Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996).

In the present case, admission of these statements was not error because petitioner cannot demonstrate that he was prejudiced by the admission of the statements. Prosecution witness Verna Lewis testified that she personally observed petitioner strike Ms. Allen in the face on two prior occasions at work. This eyewitness testimony was clearly more damaging to petitioner than Ms. Smith's testimony regarding hearsay statements of Ms. Allen.

In addition, the prosecution presented ample evidence of petitioner's guilt in its case-in-chief. As previously discussed with respect to petitioner's sufficiency of the evidence claim, the prosecution presented evidence regarding a 911 emergency call received from Ms. Allen in which she stated that her husband had set her on fire, testimony from paramedics and Dr. Saboeiro regarding Ms. Allen's statements that her husband had poured gasoline on her and set her on fire, testimony from fire investigator John Raines regarding the cause and origin of the fire, and testimony from police officers regarding petitioner's attempt to evade capture and petitioner's statements to police during questioning. In light of all this evidence presented by the prosecution

regarding petitioner's guilt, petitioner cannot show that he was prejudiced by the testimony of Ms.

Smith regarding conversations she had with Ms. Allen about prior abuse.

When the Missouri Court of Appeals discussed this question in ruling on petitioner's

postconviction motion under Missouri Supreme Court Rule 29.15 it stated:

> Even if the testimony of Annette Smith in [petitioner's] second trial was inadmissible under a residual exception to the hearsay rule, it did not result in any outcome-determinative prejudice to [petitioner]. In State v. Barriner, 34 S.W.3d 139, 150 (Mo. banc 2000), the Missouri Supreme Court stated:

> > "As noted in State v. Roberts, 948 S.W.2d 577 (Mo. banc 1997), *cert. denied*, 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998), the test is whether the prejudicial improper admission was outcome-determinative. Id. at 592. There is a distinction between evidence-specific and outcome-determinative prejudice. Id. When the prejudice resulting from the improper admission of evidence is only evidence-specific and the evidence of guilt is otherwise overwhelming, reversal is not required. Id. In contrast, when the prejudice resulting from the improper admission of evidence is outcome-determinative, reversal is required. Id. A finding of outcome-determinative prejudice 'expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence.'" Id.

> In the present case, hearsay testimony of Annette Smith was admitted at [petitioner's] second trial. Smith testified that she observed injuries to victim, such as black eyes and a busted lip. She stated that victim told her initially that victim's cousin had caused the injuries. Later, victim told Smith that [petitioner] had inflicted the injuries.

> The direct testimony of Verna Lewis, another of victim's co-workers, was also admitted in the second trial. Lewis testified that she personally observed [petitioner] strike victim in the face on two prior occasions at their workplace. One incident of abuse observed by Lewis resulted in a black eye and busted lip to victim.

> Annette Smith testified that victim suffered black eyes and a busted lip from [petitioner's] abuse. In light of the direct testimony by Verna Lewis that she witnessed [petitioner] inflict the same type of injuries upon victim, we do not believe the exclusion of the testimony of Smith concerning her conversations with victim about prior abuse would have impacted the outcome of the case. Additionally, other evidence, such as forensic analysis of victim's home and victim's statements implicating [petitioner] was admitted. We do not believe that when considered with all of the evidence at trial, there is a reasonable probability that the exclusion of Smith's testimony would have caused the jury to reach a different conclusion. Therefore, no outcome-determinative prejudice resulted

from its admission.

Resp't Ex. J at 9-10.

Further, the decision of the Missouri Supreme Court regarding the hearsay statements admitted in petitioner's first trial can be distinguished from the statements admitted in the second trial. First, the hearsay evidence presented in the first trial was admitted under the state of mind exception to hearsay evidence. See State v. Bell, 950 S.W.2d 482, 483 (Mo. banc 1997). The Missouri Supreme Court held that the statements of prior abuse were not declarations of Ms. Allen's state of mind and were thus inadmissible hearsay. See id. at 484. In a concurring opinion, a four-judge majority noted that the testimony of Ms. Smith would have been admissible under the residual hearsay exception had such an exception been in effect in Missouri at the time of petitioner's trial. See id. at 487. The concurrence encouraged the adoption of a residual hearsay exception, but acknowledged that the evidence at issue had not been attempted to be admitted under such an exception. See id. Before the second trial, a hearing was held to determine the admissibility of hearsay statements of Ms. Allen. The trial court determined that statements made by Ms. Allen to Ms. Smith were admissible under the residual hearsay exception. The court found that these statements evidenced petitioner's intent and were reliable and trustworthy.

Second, additional testimony regarding prior abuse was admitted in petitioner's first trial, which caused the Missouri Supreme Court to find that petitioner was prejudiced. Specifically, two police officers testified at the first trial regarding occasions that they responded to incidents of assault. See id. at 483. Officer Tommy Brown testified that, when he responded to a call concerning an assault at Ms. Allen's address, he was told by Ms. Allen that petitioner had beaten her continuously for one hour and had attempted to break her leg by twisting it. See id. Officer

Darren Burkette testified as to the same facts. <u>See id.</u> Further, at petitioner's first trial, Ms. Smith testified regarding additional acts of abuse. Ms. Smith stated that Ms. Allen came to work on several occasions with black eyes and that she came to work on crutches on one occasion. <u>See id.</u> Ms. Smith testified that petitioner had beaten Ms. Allen with an iron pipe to inflict the injury requiring the crutches. <u>See id.</u> None of this prejudicial evidence was presented at petitioner's second trial.

In sum, petitioner has not demonstrated that there is a reasonable probability that Ms. Smith's testimony affected the trial's outcome. The state court's determination with respect to the admissibility of the testimony regarding prior abuse was not contrary to clearly applicable federal law.

Accordingly, the undersigned recommends that petitioner's first ground for relief be denied.

**2.     Ground Two**

In his second ground for relief, petitioner argues that his rights to due process and a fair trial were violated when the trial judge referred to defense witness Pamela Walker as a "lying witness" in the presence of the jury. Petitioner contends that this comment reveals bias on the part of the trial judge. Respondent argues that the Missouri Court of Appeals properly determined that petitioner's claim was meritless.

The following exchange occurred during the prosecutor's questioning of defense witness Pamela Walker:

[PROSECUTOR]: Ms. Walker, would it change your statement that you are absolutely sure that it was Friday morning that Fay Allen brought your child back if you knew that it had been testified in a prior proceeding under oath that it was actually Thursday, June 2nd,

that Ms. Allen brought your child back?

\*\*\*

[DEFENSE COUNSEL]: We ask to be heard outside the presence of the jury.

[THE COURT]: All right, you may come up again.

(Counsel approached the bench, and the following was had:)

[PROSECUTOR]: Your Honor.

[DEFENSE COUNSEL]: I would like to state for the record that it is clear now that [the prosecutor] has attempted to bring out the prior testimony about the trial. She knew this was going to happen. She planned this to happen. She wanted it to happen. We are asking for a mistrial.

[THE COURT]: This is a lying witness. [The prosecutor] has a right to--

[DEFENSE COUNSEL]: It is clear you are yelling at our witnesses and behaving in an improper manner. You called her a liar. It is not fair for you to say that. It is clear you have prejudiced the jury with your behavior and prejudice toward her with this behavior. To do that is improper. We are asking for a mistrial on [the prosecutor's] improper questioning of this witness, knowing it was going to come out, knowing this probably would happen.

We are asking for a mistrial based on your behavior to the witness in front of the jury.

[THE COURT]: Your witness volunteers information. She doesn't shut up when I'm telling her to. Now she is volunteering the prior trial when I'm trying to stay away from it.

\*\*\*

[DEFENSE COUNSEL]: Judge, I would like to put on the record you called the witness a lying witness while the jury is present.

[THE COURT]: The jury could not hear me whispering to [the court reporter].

[DEFENSE COUNSEL]: You called her a liar enough for them to hear.

[THE COURT]: I'm going to count to ten and proceed, [defense counsel]. Let's proceed with this trial. Let's get proper evidence in.

Resp't Ex. A at 528-31. When the prosecutor resumed questioning of the witness, the following exchange occurred:

[PROSECUTOR]: Ms. Walker, I'm going to ask you the same question. Would it change your testimony that you are certain it was Friday morning, June 3rd that Fay Allen brought your child back if you knew that when you testified under oath in a prior proceeding that it was Thursday Fay Allen brought your child back to your home?

[MS. WALKER]: I still say you don't understand what I said. The date–and the date I'm

not sure which date went with what day. I'm not going to change what I said. I'm not a liar. I'm not going to change what I said. She brought my son back without my brother's permission. I don't care if it was a Wednesday, the day was the 27th. I said it was the 30th.

Id. at 533.

Petitioner raised this same claim on direct appeal of his convictions. The Missouri Court of Appeals found that the trial judge's comment occurred outside of the hearing of the jury. See Resp't Ex. E at 7. The Court noted that, when defense counsel objected at trial, the trial judge stated that the comment was whispered to the court reporter. See id. at 7-8. For purposes of federal habeas review of state-court criminal proceedings, a state court's factual findings are presumed to be correct. Sumner v. Mata, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981).

The opinions formed by a judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). See Ryan v. Clarke, 387 F.3d 785, 794 (8th Cir. 2004).

In this case, the trial judge's comment does not demonstrate bias that would deprive petitioner of his right to a fair trial. The trial judge made his comment during a bench conference outside the presence of the jury. The trial judge stated that his comment was whispered to the court reporter. Petitioner contends that Ms. Walker's statement "I'm not a liar," contained in her response to the prosecutor's first question after the bench conference reveals that Ms. Walker overheard the judge's comment. Ms. Walker's statement, however, does not indicate that she

overheard the judge's comment. The prosecutor and defense counsel had both repeatedly

questioned Ms. Walker regarding the date on which Ms. Allen brought her child back. The bench

conference was provoked when the prosecutor attempted to impeach Ms. Walker's testimony with

testimony from petitioner's previous trial. As such, Ms. Walker's comment "I'm not a liar," was a

reasonable response to the prosecutor's question and does not indicate that Ms. Walker overheard

the judge's comment.

Accordingly, the undersigned recommends that petitioner's second ground for relief be

denied.

### 3.      Ground Three

In his third ground for relief, petitioner argues that his equal protection rights were violated

when the trial judge allowed the prosecution to peremptorily strike an African-American

venireperson, Mr. Johnson, based solely on race. Respondent contends that the Missouri Court of

Appeals properly found that the prosecutor articulated a race-neutral reason for the exclusion of

Mr. Johnson.

The record reveals that defense counsel raised a challenge pursuant to Batson v. Kentucky,

476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), based on the prosecution's strike of

Venireperson Johnson because he was African-American. See Resp't Ex. A at 196. The

prosecution provided the following race-neutral explanation for the strike:

> Mr. Johnson I struck because he stated extremely firmly that he absolutely believed police
> officers can lie. I would say based on that and body language toward me as opposed to
> Mr. Scholz, that I did not believe that he would be a pro-state juror.

Id. at 197. The trial court found that the prosecutor's reasons for striking Mr. Johnson were race-

neutral, and overruled defense counsel's Batson objection. See id. Defense counsel made no

attempt to argue that the prosecutor's stated reasons for striking Mr. Johnson were pretextual.

A three-part analysis is employed to determine the validity of peremptory challenges under Batson. See Devoil-El v. Groose, 160 F.3d 1184, 1186 (8th Cir. 1998). Under the first step, a defendant must make a prima facie case of discrimination. See id. "To establish a prima facie case, the defendant must show that [s/he] is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove members of his race from the venire." Devose v. Norris, 53 F.3d 201, 204 (8th Cir. 1995). If a prima facie case is made, the burden shifts to the prosecution to articulate a race-neutral explanation for striking the prospective juror. At stage two, "a court does not weigh the plausibility of the reasons given by the state, but merely determines whether the reasons are facially race-neutral." Gibson v. Bowersox, 78 F.3d 372, 374 (8th Cir. 1996). Finally, "[i]f the government gives a race-neutral reason, the reviewing court must decide whether the defendant has proven purposeful discrimination by evaluating the persuasiveness of the proffered reason." Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997). Throughout this process, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam).

A trial court's ultimate finding on whether a race-neutral explanation is merely a pretext for discrimination is a question of fact, which is presumed correct in the federal habeas context. See Gibson, 78 F.3d at 374. Such findings will only be set aside, absent procedural error, if they are "not fairly supported by the record." Id. (quoting Purkett, 514 U.S. at 769, 115 S. Ct. at 1771). In this case, the prosecution provided sufficient race-neutral reasons for striking Mr. Johnson. Petitioner has not shown that the prosecution's race-neutral reasons for striking Mr. Johnson were

pretextual. The state court's determination with respect to the prosecution's peremptory strike of

Mr. Johnson was not contrary to clearly applicable federal law.

Accordingly, the undersigned recommends this ground for relief be denied.

### 4. Ground Four

In his fourth ground for relief, petitioner argues that his conviction was obtained in

violation of the Compulsory Process Clause because the trial judge refused to allow petitioner to

present business records testimony from defense witness Ed Sander to contradict the rebuttal

testimony of Verna Lewis. Respondent contends that the state courts reasonably determined that

the evidence at issue was collateral to the issues at trial.

Petitioner sought to call Ed Sander, the custodian of records at the business where Ms.

Allen and Ms. Lewis worked, to show that petitioner did not strike Ms. Allen at work because

such an incident would have been reported and no report was made. See Resp't Ex. A at 638-39.

The prosecutor objected to the defense calling Mr. Sander on the basis that Mr. Sander had no

personal knowledge of the incident and that Ms. Lewis stated that she did not know of any policy

that required such incidents to be recorded. See id. at 639. The court sustained the prosecutor's

objection. See id. at 640.

Petitioner raised this claim on direct appeal of his convictions. The Missouri Court of

Appeals held that the evidence at issue was collateral, as it would not rebut the fact that the

incident happened, but would only show that the incident was not recorded in personnel files. See

Resp't Ex. E at 9.

The Sixth Amendment right of a defendant to present witnesses in his or her defense is a

fundamental element of due process of law. See Taylor v. Illinois, 484 U.S. 400, 409, 108 S.Ct.

646, 653, 98 L.Ed.2d 798 (1988). However, the Sixth Amendment right to compulsory process does not confer a right to present testimony free of the constraints of the adversarial system. See U.S. v. Nobles, 422 U.S. 225, 241, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141 (1975). Exclusion of witnesses is a proper discovery sanction designed to prevent "an eleventh hour defense." Taylor, 484 U.S. at 411-412. In order to be entitled to compulsory process, the defendant must show how the witness' testimony would have been "both favorable and material to his defense." U.S. v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). See also Fitzgerald v. Armontrout, 963 F.2d 1062, 1064 (8th Cir. 1992). To establish that the testimony was material, it must be shown that the testimony might have affected the outcome of the trial, and this determination must be evaluated in the context of the entire record. See Valenzuela-Bernal, 458 U.S. at 868. Further, if the testimony of the witnesses would be cumulative or repetitive, a court acts within its discretion if it excludes the witness's testimony. See U.S. v. Gilliss, 645 F.2d 1269, 1279 (8th Cir. 1981).

An examination of the record reveals that by excluding the witness, the trial court did not abuse its discretion to such a degree as to effect a violation of petitioner's Sixth Amendment right to compulsory process. The testimony at issue would not have shown that the incident at the workplace of Ms. Lewis and Ms. Allen did not occur. Rather, the testimony would only have established that the incident was not recorded. Ms. Lewis, however, testified that she was not aware of a company policy that required such incidents to be recorded. As such, the testimony at issue was collateral and would not have been material to petitioner's defense. The state court's determination with respect to the testimony of Mr. Sander was not contrary to clearly applicable federal law.

Accordingly, the undersigned recommends that petitioner's fourth ground for relief be denied.

### 5.    Ground Five

In his fifth and final ground for relief, petitioner argues that he was deprived of his right to be present at all critical stages of trial when the trial judge answered a jury question during deliberation without notifying counsel. Respondent contends that petitioner did not suffer any prejudice because in answering the jury's question, the trial judge merely reiterated the jury instructions.

The record reveals the following discussion occurred:

THE COURT: Let the record show that it is ten until four Saturday afternoon now and I don't think a record was made yesterday–oh, here is Curtis–okay, it is about ten until four now, and yesterday afternoon at 6:50 p.m., the jury sent out a note that said "Agreement or stipulation of facts between attorneys regarding defendant's presence in the house or involvement in depositing gasoline on victim," signed James R. Williams.

I sent back–it is such a screw-ball screwy note, none of the attorneys were here. I immediately on the court memorandum handed to the bailiff–I have to take the standard wording, "The jury must be governed by the instructions and the evidence as you recall it." Signed my name.

[DEFENSE COUNSEL]: Could I see the note?

[DEFENSE COUNSEL]: That form ultimately will be your answer?

THE COURT: The note itself is on the form.

[DEFENSE COUNSEL]: Your answer.

THE COURT: It is in the jury room. We'll have to try to locate it, but the exact wording is, "The jury must be governed by the instructions and the evidence as you recall it."

[DEFENSE COUNSEL]: What time yesterday?

THE COURT: 6:50 p.m.

[DEFENSE COUNSEL]: I guess our response–

[PROSECUTOR]: I have no objection to what the Judge did. I don't know what other response you could give.

[DEFENSE COUNSEL]: I guess our response would be that we would ask to call the jury out, tell them we certainly don't stipulate to any kind of involvement. And Judge, I will make that a formal request.

THE COURT: Overruled.

Resp't Ex. A at 674-75.

Petitioner raised the same claim on direct appeal. The Missouri Court of Appeals held that petitioner was not prejudiced by the court's response because the court merely reiterated the jury instructions. See Resp't Ex. E at 7.

A defendant in a criminal trial has the right to be present at every stage of the trial, including the impaneling of the jury and the return of the verdict. Rogers v. United States, 422 U.S. 35, 39, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1. Communications between judge and jury in the absence of and without notice to the defendant and his counsel are improper. U.S. v. Brunk, 587 F.2d 910, 912 (8th Cir. 1978). Although "such communications create a presumption of prejudice, such presumptions 'may be overcome by evidence giving a clear indication of lack of prejudice.'" Brunk, 587 F.2d at 912-13 (quoting Rice v. United States, 356 F.2d 709, 717 (8th Cir. 1966)).

In this case, the trial court did not answer the jury's question but, rather, merely reiterated an instruction that had already been given. As such, the trial court's response to the jury's question was not prejudicial to petitioner. The state court's determination with respect to the answer the trial court provided was not contrary to clearly applicable federal law.

Accordingly, the undersigned recommends that petitioner's fifth ground for relief be denied.

### III.    Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.  See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999).  A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997)(citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)); Tokar v. Bowersox, 1 F. Supp.2d 986, 1016 (E.D. Mo. 1998).  In this case, the undersigned believes that the petitioner has failed to make a substantial showing of the denial of a constitutional right.  The undersigned believes that State v. Barriner, supra, is controlling on Ground One, the non-prejudicial effect of the admission of hearsay at petitioner's second trial.  However, the undersigned cannot say that reasonable jurists could not debate the point or that a court could not resolve the issue differently.

Accordingly, the undersigned recommends that a certificate of appealability be issued on this court's determination of Ground One.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the petition of Winston Bell-Bey for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be issued as to Ground One.

The parties are advised they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this __2nd__ day of March, 2006.

Lewis M. Blanton
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE