UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WINSTON BELL-BEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:02CV01914 ERW |
| | ) | (LMB) |
| DONALD ROPER, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court upon the Report and Recommendation of United States Magistrate Judge Lewis M. Blanton [doc. #28], which was submitted pursuant to 28 U.S.C. § 636(b). Petitioner has filed an Objection to the Report and Recommendation [doc. #31]. When a party objects to a magistrate's report and recommendation, the Court must conduct a *de novo* review of the portions of the report, findings, or recommendations to which the party objects. *See United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)).

**I. BACKGROUND**

The facts of this case are set forth in great detail in the Magistrate's Report and Recommendation, and they will not be repeated here. In his Amended Petition, Petitioner brings five grounds for relief, all of which were addressed by the Magistrate in his Report and Recommendation. According to Petitioner, his conviction and sentence to life in prison were obtained in violation of: (1) his Fifth and Fourteenth Amendment rights to due process of law, in that the trial court allowed improper rebuttal of Petitioner's witnesses and allowed improper hearsay evidence of prior bad acts; (2) his Fifth, Sixth, and Fourteenth Amendment rights to due process of law and a fair trial before a

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

fair and impartial judge and jury, in that Judge Campbell[1] referred to defense witness Pamela Walker as a "lying witness" in the presence of the jury, making a fair judgment impossible; (3) his Fourteenth Amendment right to equal protection under the law, in that Judge Campbell allowed the state to peremptorily strike an African-American venireperson based solely on race; (4) the Sixth Amendment Compulsory Process Clause, in that Judge Campbell refused to allow Petitioner to present business records testimony from defense witness Ed Sander to contradict the rebuttal testimony of Verna Lewis; and (5) his Sixth and Fourteenth Amendment rights to be present at all critical stages of trial, in that Judge Campbell answered a jury question during deliberation without notifying defense counsel or providing an opportunity to be heard. The Magistrate concluded that none of these grounds provides a basis for granting Petitioner's requested habeas relief.

## II. DISCUSSION

The Court will conduct a *de novo* review of those specific portions of the Report and Recommendation to which Petitioner has objected. *See United States v. Lothridge*, 324 F.3d at 600. Petitioner makes five objections, each of which will be addressed in turn.

A. *The Missouri Court of Appeals applied the incorrect harmless error standard of review on direct appeal and thus its analysis was contrary to, and an unreasonable application of, the governing law set forth in* U.S. v. Dominguez Benitez, *542 U.S. 74 (2004),* Brecht v. Abrahamson, *507 U.S. 619 (1993) and* Chapman v. California, *386 U.S. 18 (1967).*

Petitioner's first objection is related to his first ground for relief. In Ground One, Petitioner claims, among other things, that the trial court erred in admitting certain alleged hearsay testimony of Annette Smith in violation of his Fifth Amendment right to due process of law. In this first objection, Petitioner does not object to any specific portion of the "report, findings, or

---

[1] Judge Campbell presided over Petitioner's jury trial in state court.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

recommendations." *Lothridge*, 324 F.3d at 600. Instead, Petitioner sets forth an argument that, in rejecting his hearsay claim, the Missouri Court of Appeals utilized an incorrect standard for evaluating whether the admission of the alleged hearsay evidence was prejudicial. It appears that this particular argument has been waived. Upon review of the briefs filed in this case and the Report and Recommendation, the Court has been unable to find any reference to the argument Petitioner now advances. Thus, it appears that this argument regarding the standard of review employed by the Missouri Court of Appeals was not raised by Petitioner prior to the instant filing of his Objections. In accordance with § 2254, Petitioner is entitled to make objections to the Magistrate's Report and Recommendation, and the Court must make a *de novo* review of those portions to which a petitioner specifically objects. However, Petitioner is not entitled to present new arguments for the first time in his Objections. Because Petitioner's first objection is essentially the presentation of a new argument not previously presented, his argument has been waived, and the Court need not consider it.

Even if Petitioner's argument was not waived due to his failure to raise it at the proper time, it nonetheless fails to provide a basis for relief. In addressing Petitioner's hearsay claim in the context of determining whether to grant or deny Petitioner's motion to recall the mandate issued following his direct appeal, the Missouri Court of Appeals stated:

> Even had the transcript been correct for the court's consideration in movant's direct appeal, the statements would not warrant a reversal of movant's convictions. In the present case, the testimony of Annette Smith concerning statements made to her by victim was challenged as inadmissible hearsay in movant's direct appeal. The trial court found that the evidence was otherwise trustworthy and was admissible under the residual exception to the hearsay rule. We do not need to determine whether Smith's testimony was admissible because we do not believe that movant was

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

prejudiced by the admission of such testimony. However, we do note that in a concurring opinion in *Bell I*, a four-judge majority of the Missouri Supreme Court noted that the testimony of Smith would have been admissible under the residual hearsay exception had such an exception been in effect in Missouri at the time of movant's trial. *State v. Bell*, 950 S.W. 2d 482, 486 (Mo. banc 1997). The concurring opinion encouraged the adoption of a residual exception to the hearsay rule, but acknowledged that the evidence at issue had not been attempted to be admitted under such an exception; therefore, the exception could not be invoked *sua sponte*. *Id.*

Even if the testimony of Annette Smith in movant's second trial was inadmissible under a residual exception to the hearsay rule, it did not result in any outcome-determinative prejudice to movant. In *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000), the Missouri Supreme Court stated:

> As noted in *State v. Roberts*, 948 S.W.2d 577 (Mo. banc 1997), *cert. denied*, 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998), the test is whether the prejudicial improper admission was outcome-determinative. *Id.* at 592. There is a distinction between evidence-specific and outcome-determinative prejudice. *Id.* When the prejudice resulting from the improper admission of evidence is only evidence-specific and the evidence of guilt is otherwise overwhelming, reversal is not required. *Id.* In contrast, when the prejudice resulting from the improper admission of evidence is outcome-determinative, reversal is required. *Id.* A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence. *Id.*

. . . .

Annette Smith testified that victim suffered black eyes and a busted lip from movant's abuse. In light of the direct testimony by Verna Lewis that she witnessed movant inflict the same type of injuries upon victim, we do not believe the exclusion of the testimony of Smith concerning her conversations with victim about prior abuse would have impacted the outcome of the case. Additionally, other evidence, such as forensic analysis of victim's home and victim's statements implicating movant was admitted. We do not believe that when considered with all of the evidence at trial, there is a reasonable probability that the exclusion of Smith's testimony would have caused the jury to reach a different conclusion. Therefore, no outcome-determinative prejudice resulted from its admission.

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*Missouri v. Bell*, 83 S.W.3d 670, 675-76 (Mo. Ct. App. 2002). Petitioner's argument is that the Missouri Court of Appeals improperly employed an "outcome-determinative" standard in assessing prejudice instead of using the "beyond a reasonable doubt" standard mandated by *Chapman v. California*, 386 U.S. 18 (1967). Petitioner claims that, because the Missouri Court of Appeals utilized an incorrect standard of review, its decision regarding his hearsay claim was contrary to established United States Supreme Court precedent.

Petitioner correctly points out that the Missouri Court of Appeals made no determination as to whether the alleged hearsay statements from Ms. Smith were admissible. Instead, it determined that it did not need to reach that question because any alleged error in admitting the testimony was not prejudicial to Petitioner.[2] Petitioner also correctly points out that the United States Supreme Court has expressly mandated that, on direct review, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24. Petitioner argues that the Court of Appeals did not apply this standard and that its decision is therefore contrary to established federal law.

Because the Missouri court's analysis presumed for the sake of argument that Petitioner had been denied a constitutional right, Petitioner's conclusion that the Missouri court was required to utilize the *Chapman* "reasonable doubt" standard is correct. The Missouri court did not use the

---

[2]The Court notes that the Missouri court's analysis was performed in the context of deciding Petitioner's motion to recall the mandate from his direct appeal. As the Magistrate explained, Petitioner filed a motion to recall the mandate after it was determined in another proceeding that the trial transcript that had been submitted in the direct appeal was incorrect. In concluding that the mandate did not need to be recalled, the court determined that any alleged error in admitting the hearsay statements was not prejudicial to Petitioner. Thus, the court's analysis of the hearsay point was decided in a posture akin to direct appellate review.

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

words "beyond a reasonable doubt" in resolving Petitioner's hearsay claim; however, the court was not required to do so. *See Brown v. Luebbers*, 371 F.3d 458, 462-63 (8th Cir. 2004). In this case, because it appears that the Missouri court employed a standard other than the *Chapman* "beyond a reasonable" doubt standard, this Court will review Petitioner's hearsay claim pursuant to *Chapman*. *See Richardson v. Bowersox*, 188 F.3d 973, 979 (8th Cir. 1999) (applying *Chapman* standard where state court had failed to do so). Assuming, *arguendo*, that Ms. Smith's statements were hearsay admitted in violation of Petitioner's constitutional right to confront witnesses against him, their admission is subject to harmless-error analysis. *Id.* As is more fully detailed in the Magistrate's extensive recitation of the evidence in this case, at trial, the prosecution presented a great deal of evidence of Petitioner's guilt. This evidence included: (1) a tape recording of Ms. Allen's 911 call, in which she requested help and stated that Petitioner had set her on fire; (2) testimony from two paramedics and a treating physician that Ms. Allen had stated that her husband had poured gasoline on her and set her on fire; (3) testimony that Petitioner fled after being spotted by a police officer and was eventually found hiding underneath a car; (4) testimony as to how the fire was started; (5) testimony that the evidence was consistent with Ms. Allen moving down the hallway as an accelerant was poured on her and with her going to the shower to put the fire out after she was ignited; and (6) testimony that, when the police asked Petitioner whether he had been at Ms. Allen's house earlier that day, he began crying. Additionally, when asked about what had happened, he stated, "I don't know. I don't know," and also stated "[i]t just happened. It just happened." As the Magistrate correctly concluded, "[o]ne cannot pick up a container of gasoline, pour it on another and then set the person on fire without deliberately intending to do so." Rep., p. 19. In light of the overwhelming evidence

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of Petitioner's guilt and the direct testimony of Ms. Lewis describing Petitioner's behavior at the workplace, it can be said with assurance that Ms. Smith's statements did not contribute to the jury's finding of guilt. *See Chapman*, 386 U.S. at 24. Thus, any error in admitting Ms. Smith's statements was harmless beyond a reasonable doubt. Therefore, Petitioner's first objection, to the extent it is not waived for failure to raise it at the appropriate time, provides no basis for relief.[3]

B.  *The Missouri courts' analysis of whether venireperson Johnson was stricken based on race was contrary to and an unreasonable application of the governing law set forth in* Batson v. Kentucky*, 476 U.S. 79 (1986).*

Petitioner's second objection is related to his third ground for relief. In Ground Three, Petitioner claims that his Fourteenth Amendment right to equal protection under the law was violated when Judge Campbell allowed the state to peremptorily strike an African-American venireperson, Mr. Johnson, based solely on race. Petitioner objects to the Magistrate's finding that the prosecution provided sufficient race-neutral reasons for striking Mr. Johnson and that Petitioner had failed to demonstrate that the prosecution's race-neutral reasons were pretextual. Rep., pp. 31-32. At trial, defense counsel raised a challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), based on the prosecution's strike of a male African-American venireperson, Mr. Johnson:

> Mr. Scholz: We object to the State striking Ms. Rutlin and Ms. Dandrige, Ms. Thompson[.] Mr. Johnson is the only African American male available to be picked on the jury. The female blacks -- the State struck four of the six -- in total they struck five of seven possible blacks from the jury. They used a majority of their strikes for African Americans. Clearly percentages of the races in the venire dictated

---

[3]Petitioner also appears to make some sufficiency of the evidence arguments throughout his objections. The Court notes that the Magistrate correctly concluded that any sufficiency of the evidence claims were procedurally defaulted. Petitioner has raised no specific objection to this conclusion.

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> different numbers. We feel the State's striking of Johnson, Rutlin, Dandridge, Thompson, and Inman was because of racial prejudice or bias which contradicts to the decisions of *Batson* and its approach.
>
> . . . .
>
> Ms. Costantin: Your Honor, I'll go through each of the strikes and my reason. Mr. Johnson I struck because he stated extremely firmly that he absolutely believed police officers can lie. I would say based on that and body language toward me as opposed to Mr. Scholz, that I did not believe that he would be a pro-state juror. . . .
>
> . . . .
>
> The Court: All right, let the record show that I find they are race neutral reasons for the strikes; therefore, I overrule the objection under *Batson*.

Tr., v. 2, pp. 196-99. In considering this issue on direct review, the Missouri Court of Appeals stated:

> In his fourth point, Bell argues the trial court erred in allowing the State to strike an African-American venire person in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). The trial court's finding of a race-neutral explanation is entitled to deference. *State v. Hinkle*, 987 S.W.2d 11, 13 (Mo. App. E.D. 1999). We will affirm the trial court's denial of defendant's *Batson* claims unless it is clearly erroneous. *State v. Smulls*, 935 S.W.2d 9, 14 (Mo. 1996). We will find the trial court's ruling clearly erroneous only if we are left with a definite and firm conviction that a mistake has been made. *Id.*
>
> Missouri has adopted a three-step process for making a successful *Batson* challenge. *State v. Deck*, 994 S.W.2d 527, 537 (Mo. 1999). First, the defendant must object to the state's peremptory strike and identify the protected class to which the prospective juror belongs. *Id.* The state is then required to provide a reasonably specific and clear, race and/or gender-neutral explanation for the strike. *Id.* If the state provides such an explanation, the burden then shifts to the defendant to show that the state's explanation was pretextual and that the strike was actually motivated by the prospective juror's race or gender. *Id.* In evaluating the prosecutor's explanation, the chief consideration is whether the explanation is plausible in light of the totality of the facts and circumstances surrounding the case. *Id.*
>
> Here, the State gave a reason for striking an African-American venireperson that was race-neutral. The State's reason was a statement concerning the venireperson's belief of a police officer's testimony and the venireperson's body language towards the State's attorneys. Bell did not demonstrate that the reason was pretextual and that the strike was racially motivated. Bell merely asserted that the

8

State was mischaracterizing the venireperson's testimony. Point denied.

Resp. Ex. E., p. 9.

A review of the record indicates that the Missouri courts applied the correct federal law and that they did not do so in an unreasonable manner. As the Eighth Circuit has explained:

> In *Batson v. Kentucky*, the Supreme Court adopted a three-part test to be used to determine whether a peremptory strike violates the Equal Protection Clause. *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986). First, the opponent of a peremptory challenge must make a prima facie showing that the proponent has exercised the peremptory challenge on the basis of race. *Id.* at 97. If the requisite showing has been made, the burden then shifts to the proponent to articulate a race-neutral explanation for striking the juror in question. *Id.* Finally, the trial court must determine whether the opponent has carried the burden of proving purposeful discrimination by the proponent. *Id.* at 98.

*U.S. Xpress Enterprises, Inc. v. J.B. Hunt Transport, Inc.*, 320 F.3d 809, 812 (8th Cir. 2003). In this case, the trial court followed the procedure set forth in *Batson*. When defense counsel made a *Batson* objection regarding Mr. Johnson, the prosecution came forward with a race-neutral reason for striking him. The defense attorney made no further comments and did not challenge or question anything that the prosecutor said with regard to her reasons for striking Mr. Johnson. The trial court then made a determination that the reason offered was race-neutral, satisfied that Petitioner had not met his burden of proving purposeful discrimination.[4] Defense counsel made no objection the trial court's finding and did not ask for any further findings or clarifications from the trial court.

The Court of Appeals determined that the prosecutor gave two reasons for striking Mr. Johnson: (1) his belief of a police officer's testimony, and (2) his body language towards the State's attorneys. The Court of Appeals further noted that defense counsel did nothing to demonstrate that

---

[4]Contrary to Petitioner's argument, the trial court's finding complied with the procedure mandated by *Batson*.

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the reasons given were pretextual. The Court of Appeals concluded that the trial court's resolution of the *Batson* challenge followed proper procedure and was not in error. A trial court's finding on whether a race-neutral explanation is merely a pretext for discrimination is a question of fact, which is presumed correct for purposes of habeas review. *Gibson v. Bowersox*, 78 F.3d 372, 374 (8th Cir. 1996). Such a finding will be set aside only if it is not fairly supported by the record. *Id.* Though not without cause for concern, the Court finds that the trial court's determination as to no pretext is fairly supported by the record in this case. The prosecutor gave two reasons for striking Mr. Johnson. The prosecutor stated that she was striking Mr. Johnson "because he stated extremely firmly that he absolutely believed police officers can lie." Tr., v. 2, p. 197. As Petitioner points out, this stated reason is without support in the record. Mr. Johnson never made any statement that could be said to fairly support the prosecutor's claim about his views, and it appears that, at best, the prosecutor grossly mischaracterized Mr. Johnson's testimony.[5] While this fact is troubling, it does

---

[5]Mr. Johnson spoke only a handful of times throughout the voir dire process. Most of the questions he answered had nothing to do with police officers. *See* Tr., v. 1, pp. 14-15 (stating he had been a juror in a civil case before and case had settled); p. 135 (stating he was retired from McDonnell Douglas). The only time Mr. Johnson was asked about police officers, the exchange went as follows:

| | |
|---|---|
| Mr. Scholz: | Essentially the Judge put it correct, because they are police officers, they are always going to be truthful. You assess their credibility differently than someone else. Anybody here who might do that. Anybody tend to believe a police officer, like Mr. Bollasina, over a lay witness or Mr. Bell, if he would testify, no. . . . |
| . . . . | |
| Mr. Scholz: | . . . Mr. Johnson, is there anything about a police officer that would tend to make you believe a police officer more than any other witness? |
| Mr. Johnson: | No. |
| Mr. Scholz: | You would tend to believe a police officer? |
| Mr. Johnson: | Other than? |

Tr., v. 1, pp. 150-51. The questioning was then abruptly ended by an objection from the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

not establish that the trial court's determination must be set aside. The prosecutor also stated that Mr. Johnson's body language gave her the impression that he would not be a good witness for the State. Body language can constitute a race-neutral reason for a strike. *See, e.g.*, *U.S. v. Love*, 419 F.3d 825, 827 (8th Cir. 2005) (rolling eyes and unfriendly body language toward the government's attorney); *Devoil-El v. Groose*, 160 F.3d 1184, 1187 (8th Cir. 1998) (covering face with hands, slouching in seat, rolling eyes, looking uninterested); *U.S. v. Jenkins*, 52 F.3d 743, 744 (8th Cir. 1995) (body language and facial expressions indicating disinterest). Petitioner argues that there is no statement or finding in the record concerning Mr. Johnson's body language. However, Petitioner cannot now be heard to complain about the lack of a record concerning Mr. Johnson's body language. From the record, it is clear that defense counsel made no arguments and developed no record that might demonstrate that the prosecutor's reasons were pretextual. *See Luckett v. Kemna*, 203 F.3d 1052, 1055 (8th Cir. 2000) (noting petitioner made no arguments and developed no record in trial court to demonstrate prosecutor's reasons were pretextual). The trial court had the opportunity to observe the entire voir dire process and to observe the demeanor of all of the venirepersons. Under applicable law, the trial court's determination as to this matter is entitled to deference, and Petitioner has failed to meet his burden of demonstrating that the trial court's determination should be set aside. Thus, Petitioner's second objection provides no basis for relief.

---

prosecutor. No further inquiry was made of Mr. Johnson.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

C. *The Court's affirmance of the exclusion of Ed Sander's testimony that would have shown that Verna Lewis was not telling the truth about Bell-Bey assaulting the deceased at work was contrary to federal law and an objectively unreasonable application of federal law because he had a Sixth Amendment right to present a defense that rebutted prosecution testimony against him.*

Petitioner's third objection is related to his fourth ground for relief. In Ground Four, Petitioner claims that his right to compulsory process, as guaranteed by the Sixth Amendment, was violated when Judge Campbell refused to allow him to present testimony from Ed Sander to contradict the rebuttal testimony of Verna Lewis. Petitioner objects to the Magistrate's conclusion that the exclusion of Mr. Sander's testimony did not effect a violation of his Sixth Amendment right. Rep., p. 33. At trial, Petitioner sought to call Mr. Sander, the custodian of records at the business where Ms. Allen and Ms. Lewis worked. Petitioner wanted to use Mr. Sander's testimony to show that Petitioner did not strike Ms. Allen at work because such an incident would have been recorded in Ms. Allen's personnel file and the file contains no such record. The prosecutor objected to the defense calling Mr. Sander, stating that Mr. Sander had no personal knowledge of the incident and that Ms. Lewis had stated that she did not know of any policy requiring such incidents to be recorded. In resolving this claim on direct appeal, the Missouri Court of Appeals stated:

> In his fifth and final point, Bell argues the trial court erred in prohibiting testimony to rebut State testimony regarding prior incidents of abuse. We disagree. The trial court is vested with broad discretion to admit and exclude evidence at trial. *Clayton*, 995 S.W.2d at 474. Error will be found only if this discretion was clearly abused. *Id.* On direct appeal we review the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.*
> Here, Bell wanted evidence admitted that there was no record of an employee telling her supervisor of an incident where Bell struck Allen in her workplace. This evidence would not rebut the fact that the incident happened[,] only that the incident was not recorded in personnel files and was therefore collateral to the issue. The trial court did not abuse its discretion by excluding the evidence. Point denied.

12

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Resp. Ex. E, p. 9.

Petitioner argues that the Missouri Court of Appeals' ruling was contrary to Supreme Court precedent because it failed to identify the proper standard for application of the Compulsory Process Clause and was an objectively unreasonable application of Supreme Court decisions. "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). This right to present a defense is part of the Sixth Amendment Compulsory Process Clause, as incorporated into the Due Process Clause of the Fourteenth Amendment, and is a "fundamental element of due process of law." *Id.* at 18-19. To establish a violation of this constitutional right to compulsory process, a petitioner must make a plausible showing that the excluded testimony would have been material and favorable to the petitioner's defense. *See U.S. v. Valenzuela-Bernal*, 458 U.S. 858, 865 (1982). The omission of the evidence "must be evaluated in the context of the entire record." *U.S. v. Agurs*, 427 U.S. 97, 112 (1976). In reviewing the record, a court should focus on whether the exclusion so fatally infected the trial as to constitute an "absence of fairness." *See Valenzuela-Bernal*, 458 U.S. at 872.

Petitioner argues that the Missouri Court of Appeals did not identify nor apply the law applicable to his compulsory process argument and that the court's finding of no prejudice was an objectively unreasonable application of federal law. According to Petitioner, Mr. Sander's testimony would have been material and favorable. Petitioner claims that Mr. Sander, as the custodian of records at Ms. Allen's workplace, would have testified that it was the company's policy to record

13

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

incidents such as the ones Ms. Lewis testified about and that no such entry was made in Ms. Allen's personnel file. Petitioner states that the purpose of the testimony was to contradict Ms. Lewis's testimony that Petitioner assaulted Ms. Allen at work. First, the Court notes that Petitioner has made no showing before this Court, through affidavit or any other means, that such a policy actually existed or that Ms. Allen's file in fact was devoid of any reference to the incidents testified to by Ms. Lewis. Second, assuming there was such a policy and that Ms. Allen's personnel file did not contain any reference to the alleged incidents, Mr. Sander's testimony would, at most, create a question of fact as to whether the incidents testified to by Ms. Lewis took place. His testimony would not foreclose the possibility that the incidents actually occurred, but would have merely established that no such incidents were recorded in Ms. Allen's personnel file.

As Petitioner correctly points out, the absence of an entry in a regularly kept business record can be used as evidence that the matter that would have been recorded did not occur. *See Boyer v. City of Potosi*, 77 S.W.3d 62, 69 (Mo. Ct. App. 2002). According to Petitioner, had the jury believed Mr. Sander that there was no entry in Ms. Allen's personnel file stating that she had been assaulted at work and had the jury believed Mr. Sander that such an entry would have been made if it had happened, the jury would not have believed Ms. Lewis's claim that Petitioner had assaulted Ms. Allen at work. Petitioner claims that the excluded evidence therefore would have been favorable to his defense and that it would have contradicted important prosecution testimony regarding Petitioner's intent.

Assuming *arguendo* that Mr. Sander would have testified to the existence of a policy to report such incidents and that he would have stated that Ms. Allen's personnel file contained no such record, Mr. Sander's testimony could have been used as evidence that the alleged incidents did not take place.

14

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The Missouri Court of Appeals appears to have concluded that it was proper to exclude the evidence, that the exclusion did not violate Petitioner's right to present a defense, and that no prejudice resulted from the exclusion. Though the Missouri court incorrectly found that the testimony could not have been used as evidence that the alleged events did not happen, the court's finding, to the extent that it made one, that the exclusion was not prejudicial error was not contrary to or an unreasonable application of Supreme Court precedent.[6] Even if this Court were to find that the Missouri Court of Appeals failed to apply the proper federal law or failed to adequately consider whether the exclusion of the testimony prejudiced Plaintiff, Petitioner would not be entitled to habeas relief on this claim. This Court is satisfied that the exclusion of Mr. Sander's testimony did not fatally infect the trial so as to constitute an absence of fairness. *See Valenzuela-Bernal*, 458 U.S. at 872. Moreover, the result of the trial would not have been different had Mr. Sander been permitted to testify. As already explained, the evidence of Petitioner's guilt was substantial. Even if his speculation is correct that he could have convinced the jury of the non-occurrence of the events testified to by Ms. Lewis, this would do nothing to negate the remainder of the evidence establishing his guilt. Therefore, the exclusion of Mr. Sander's testimony, assuming he would have testified in accordance with Petitioner's

---

[6]Petitioner also claims that the Missouri Court of Appeals' finding of no prejudice with regard to this issue was contrary to, and an unreasonable application of, federal law. According to Petitioner, the Missouri court should have determined whether the exclusion of Sander's testimony was harmless beyond a reasonable doubt, applying the *Chapman* standard. First, it appears that this argument is waived by Petitioner, as he did not raise it before the Magistrate and raises it for the first time in his Objections. Second, there is no indication that the court did not apply the *Chapman* standard. The court found that the exclusion of the evidence was not prejudicial to Petitioner. There is no indication that the Court's analysis was not in accordance with *Chapman*. *See Brown*, 371 F.3d at 462-63 ("no 'magic words' that must be invoked before we can conclude that the Missouri Supreme Court decided that any error was harmless beyond a reasonable doubt"; state court's use of word "prejudicial" can signal application of *Chapman* standard).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

representations, did not render Petitioner's trial unfair in violation of the Sixth or Fourteenth Amendments.[7]  Thus, Petitioner's third objection provides no basis for relief.

D.  *The Missouri Court of Appeals' approval of the trial judge's action in communicating with the jury without first informing Bell-Bey's counsel was an unreasonable application of federal law because Bell-Bey had a Sixth Amendment and Fourteenth Amendment right to be present at all critical stages of the trial, and communications with the jury about facts in controversy are a critical stage of the trial.*

Petitioner's fourth objection is related to his fifth ground for relief. In Ground Five, Petitioner claims that his Sixth and Fourteenth Amendment rights to be present at all critical stages of the trial were violated when Judge Campbell answered a jury question during deliberations without notifying defense counsel or providing an opportunity to be heard. Petitioner objects to the Magistrate's conclusion that the trial court's response to the jury question was not prejudicial and that the state court's determination on the issue was not contrary to clearly established law. In addressing this claim on direct appeal, the Missouri Court of Appeals stated:

> In his second point, Bell argues the trial court plainly erred in answering a question posed by the jury during the deliberations in the absence of counsel. Bell argues this denied him the right to counsel at a critical stage in the trial in violation of his Sixth Amendment right. We disagree. Issues that were not preserved may be reviewed for plain error only, requiring the court to find that manifest injustice or miscarriage of justice has resulted from the trial court error. *Clayton*, 995 S.W.2d at 474.
> Communications between judge and jury in the absence of and without notice to a defendant and his counsel are improper. *Molasky v. State*, 710 S.W.2d 875, 880 (Mo. App. E.D. 1986). Although these communications are presumptively prejudicial, they may be shown to constitute harmless error in the circumstances of a particular case. *Id.* In *Molasky*, the jury had asked, "How much of the sentence must the defendant serve before he's eligible for parole?" and "Must all jurors agree to the exact amount of time to be served?" *Id.* The

---

[7]Petitioner claims that the Magistrate found that he offered the testimony of Mr. Sander as an "eleventh hour defense." Pet.'s Obj., p. 18. A review of the Report and Recommendation reveals that this is a mischaracterization of the Magistrate's conclusions regarding this issue.

16

> trial court answered the questions without counsel present by responding "I cannot answer" to the first question and "Yes" to the second question. *Id.* This court found that the trial court's answers were clear and concise statements of the law, and this court found no prejudice resulted from the answering of the questions. *Id.*
>
> Here, we similarly find no prejudice arising from the trial court's response to the jury's question. The jury asked in a written note "Agreement or stipulation of facts between attorneys regarding defendant's presence in the house or involvement in depositing gasoline on victim." The note was signed by the foreperson. The judge responded, "The jury must be governed by the instructions and the evidence as you recall it." The judge signed this response.
>
> The trial court's answer, as in *Molasky*, did no more than reiterate an instruction that had already been given. Here, the trial court's answer was a clear and correct statement of the law and reiterated instruction number 17. We do not find that a manifest injustice or miscarriage of justice resulted. Any error was harmless. Point denied.

Resp. Ex. E, pp. 6-7. A criminal defendant has a right to be present at all critical stages of a trial, a right rooted in the Confrontation Clause of the Sixth Amendment and protected by the Fifth Amendment Due Process Clause in certain circumstances. *See U.S. v. Gagnon*, 470 U.S. 522, 526 (1985); *Rushen v. Spain*, 464 U.S. 114, 117 (1983). As Petitioner concedes, the Missouri Court of Appeals applied the correct standard of law in deciding that any error was harmless. Contrary to Petitioner's argument, this Court does not find that the Missouri court unreasonably applied federal law. The Missouri court found that the trial court did no more than to reiterate an instruction that already had been given and concluded that any error was harmless. Petitioner was not prejudiced by the trial court's response to the jury question. The Missouri Court of Appeals' determination as to this issue was neither contrary to established federal law nor an unreasonable application of that law. Thus, Petitioner's fourth objection provides no basis for relief.

E. *The Court should issue a Certificate of Appealability for Claims Three, Four, and Five.*

Petitioner's final objection to the Report and Recommendation is that the Magistrate

17

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

incorrectly concluded that Grounds Three, Four, and Five should not be granted a certificate of appealability. Petitioner states that he should be granted a certificate of appealability as to Grounds One, Three, Four, and Five of his Petition because he has made a substantial showing of the denial of a constitutional right. A certificate of appealability will issue if the petitioner makes a substantial showing of the denial of a constitutional right. A petitioner makes such a showing if he demonstrates that his petition involves issues which are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues are adequate enough to deserve encouragement to proceed further. *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002). Because Petitioner has not made a substantial showing of the denial of a constitutional right with respect to Grounds Two, Three, and Five, the Court will not issue a certificate of appealability with respect to those grounds. However, because the issues presented in Grounds One and Four are debatable among reasonable jurists, the Court will issue a certificate of appealability as to those two grounds.

The Court hereby sustains, adopts, and incorporates herein the Magistrate's Report and Recommendation, as supplemented by this Court's independent analysis.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Winston Bell-Bey's Amended § 2254 Petition [doc. #23] is **DENIED**.

Dated this 31st day of March, 2006.

						*E. Richard Webber*
						_____
						E. RICHARD WEBBER
						UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com